LITTLE CARNEGIE REALTY CORPORATION, Respondent, *v.* DELMONICO MOVIENEWS THEATRE, INC., Tenant, FIRST RUN FILMS, INC., Tenant-Appellant, et al., Undertenants.

First Department, December 12, 1947.

*Louis Nizer* of counsel (*Walter S. Beck* with him on the brief; *Phillips, Nizer, Benjamin & Krim,* attorneys), for appellant.

*Sidney R. Rossiter* of counsel (*Abraham J. Halprin* with him on the brief; *Leon Savage,* attorney), for respondent.

CALLAHAN, J.  In this summary proceeding the rights of the parties are to be determined on the basis of a construction of the cancellation clause in a lease for a theatre in the city of New York.

On June 5, 1941, the landlord's predecessor in title, Carnegie Hall, Inc., entered into a written lease with Delmonico Movie-news Theatre, Inc., the assignor of the present tenant, for a term commencing July 1, 1941, and ending December 31, 1951, for premises described as follows: " * * * the space now known as the ' Little Carnegie ' motion picture theatre, comprising the ground floor of the building known as No. 146 West 57th Street and the entire building known as Nos. 141-3 West 56th Street; plus the second floor rear and the rear half of the basement of No. 146 West 57th Street; plus the basement space

in No. 139 West 56th Street which now houses the ice bunkers for the air cooling system, * * *."

The theatre has its entrance and lobby on the ground floor of the five-story building at 146 West 57th Street and also occupies part of the second floor as well as one half of the basement in the same building. The lounge and retiring rooms have been built into a brick-enclosed area 18 x 40 feet on the ground floor of the adjoining five-story structure at 144 West 57th Street and are also located in a one-story building erected on the rear 25 feet of the lot known as 139 West 56th Street. The remainder of the plot at 139 West 56th Street is improved with a four-story building, in the basement of which a space 8 x 18 feet is utilized for the air-conditioning plant with pipes leading to the main portion of the theatre. The auditorium of the theatre is located in a one-story building covering lots known as 141–143 West 56th Street.

While the lease itself omits any specific reference to the premises 144 West 57th Street by street number, it is apparent that the space therein occupied for lounge and rest rooms forms an integral part of the theatre premises. We attach no significance to this omission and regard that portion of these premises as much within the purview of the lease as if expressly mentioned according to street number and designation. It may be noted that the premises 144 and 146 West 57th Street were operated as a unit with a single entrance, common hallway, one stairway, and the same elevator for both properties.

Though the demised term under the lease expires on December 31, 1951, the landlord has been awarded possession of the theatre premises pursuant to a final order in a summary proceeding based on holdover after notice of termination of the tenancy. On August 2, 1946, this notice was served on the tenant by Carnegie Hall, Inc., in purported compliance with the provisions of a cancellation clause in the lease reading as follows:

"Cancellation 34. In the event that Landlord shall enter into a bona fide contract with interests substantially different from the present owning syndicate, for the lease and/or the sale of the demised premises in conjunction with any of the properties contiguous thereto; or if Landlord shall enter into a contract for demolition of the demised premises in conjunction with any of the properties contiguous thereto, then Landlord may, at its option, cancel this lease on or after September 30, 1943, upon giving to Tenant not less than one hundred twenty (120) days' notice thereof in writing, by Registered

Mail with postage prepaid, addressed to Tenant at the demised premises. Such notice shall state that Landlord has entered into a bona fide contract in accordance with the foregoing provisions and that Landlord elects to cancel this lease and requires Tenant to remove from the demised premises upon the date named thereon, and thereupon this lease and the term hereby demised shall terminate upon the date so fixed, and Tenant agrees to surrender this lease and to vacate the demised premises and to deliver up the possession of the said premises to Landlord on said date, and Landlord may maintain summary proceedings for the recovery of such possession.   *   *   *   ''

It appears that on August 1, 1946, the original lessor, Carnegie Hall, Inc., entered into a contract for the sale of the premises 144–146 West 57th Street and 139–141–143 West 56th Street described in said contract by metes and bounds. This sale embraced the several lots and buildings in which the theatre or parts thereof are located, and no additional properties. On October 3, 1946, the closing of title took place under this contract by delivery of the deed to the landlord in this summary proceeding.

The question for decision on this appeal is whether this transaction constituted a sale of '' the demised premises in conjunction with any of the properties contiguous thereto '' within the meaning of the cancellation clause of the lease.

The landlord urges that the premises 144 West 57th Street and 139 West 56th Street are properties contiguous to the demised premises that were sold in conjunction therewith. The tenant disputes this contention and argues that a conveyance or transfer of only those properties in which the theatre or some part thereof is located cannot be regarded as a sale embracing contiguous properties within the provisions of the lease in respect to cancellation.

The record discloses that at the time of entering into the lease the original lessor was the owner of other parcels to the west of the demised premises far exceeding in value the properties in which the theatre is situated. The largest of these properties known as Carnegie Hall occupied the block front on the east side of Seventh Avenue between 56th and 57th Streets. There were additional holdings on the south side of 57th Street extending as far east as the premises 144 West 57th Street, except the premises 148 West 57th Street under different ownership. The original lessor also owned all of the property on the north side of West 56th Street eastwardly from Carnegie Hall to the premises 139 West 56th Street.

With respect to this group of holdings under the single owner-ship of the original lessor it should be noted that the building known as 150 West 57th Street and occupied as a restaurant was constructed to such a depth that it covered a large part of the lot at its rear. The remainder of this lot constituted less than one half thereof and was used for a small garage known as 153 West 56th Street. Immediately adjoining the restaurant and garage properties on the east were the premises 141–143 West 56th Street housing the auditorium of the theatre. Considering the buildings as distinguished from the land, it thus appears that the rear portion of the restaurant and all the garage constituted separate properties contiguous to the demised premises in that they touched along a common boundary line for a considerable distance.

It is in the light of these physical conditions existing at the time of execution of the lease that the provisions of the cancellation clause must be construed.

The answer to the question of construction thus presented must largely depend on what the word " contiguous " in the cancellation clause of the lease was intended to mean by the parties to that instrument. In the dictionary sense the term " contiguous " primarily signifies " touching, meeting or joining at the edge, border or boundary ". (See Funk and Wagnall's Standard, Century, and Oxford Dictionaries.) In real estate parlance it is also deemed to have relation to parcels of land touching along one side through coincidence of boundaries. (See Robinson's New York Real Estate Law [1930 ed.], § 167, p. 221.) To employ the term " contiguous " in describing one part of a property in relation to another portion of the same parcel would do violence to the common understanding of the word. Indeed, it has been observed that it would be a legal solecism to speak of property as being contiguous to itself (*Park Comrs.* v. *C., B. & Q. R. R. Co.,* 107 Ill. 105, 108). Under decisions relating to condemnation it has likewise been said that " contiguous property " necessarily means property in some way distinguishable from the land or tract of which a part is sought to be taken (*West Side Elevated Ry. Co.* v. *Johnson,* 159 Ill. 434, 437–438).

We think that no unusual signification should attach to the use of the expression " contiguous properties " in the cancellation clause of the lease under consideration. This seems to be indicated by the fact that such clause provides for cancellation of the demised term not only upon a lease but also upon a sale or demolition of the demised premises " in conjunction with

any of the properties contiguous thereto ". It is difficult to comprehend how the demised premises or theatre comprising parts of several buildings could be sold or demolished except in connection with the sale or demolition of all the buildings in which the theatre is located. As the parties to the lease must have understood that a sale or demolition of the demised premises would involve a sale or demolition of the whole of these buildings, then contiguous property in conjunction therewith would seem to mean property other than such buildings. If the lease provision in question merely contemplated a cancellation on the sale or demolition of those buildings alone in which the theatre is situated, a simple statement to that effect would have sufficed without the necessity of reference to contiguous properties. Furthermore, the use of the singular " any " (of the properties contiguous) should be noted. If intended to refer to the sale or demolition of the theatre and the balance of any one of the integrated group of buildings used for the purposes of the theatre, we again might have the extraordinary situation where only a portion of a building or buildings would be sold or demolished.

It must be remembered that the original lessor was the owner of several valuable properties to the west of the theatre. In our opinion it is more likely that the reference to " any of the properties contiguous " to the demised premises was intended to authorize cancellation of the lease and allow for improvement or sale of the whole or part of these larger holdings in conjunction with the theatre buildings.

The landlord in this summary proceeding attempts to support the right of cancellation on the factual claim that the omission of any reference by street number to the premises 144 West 57th Street in the lease manifests an intention to regard such premises as contiguous property. With a substantial part of the building at 144 West 57th Street occupied by the theatre it has already been indicated that the facts do not support this contention. A similar claim to contiguity is made for the premises 139 West 56th Street on the ground that only a small portion of the four-story building on the front part of that lot is utilized for the air-conditioning system of the theatre. This factor is said to constitute the remainder of this building not used by the theatre as property contiguous to the demised premises. While the space occupied by the air-conditioning devices is small, the machinery at this location is connected by pipes running to equipment accessory to the ventilating system erected on the roof of the buildings at 141–143 West

56th Street, which house the auditorium of the theatre. It is thus an integral part of the leased premises. Furthermore, the space accommodating the air-conditioning apparatus is not separated from the rest of the building in which it is located, and the term "contiguous" would not ordinarily be applicable in comparing such space with the remainder of the premises. In any event all of the premises 139 West 56th Street may not be regarded as contiguous to the theatre, inasmuch as the rear building on that lot is used for the lounge and retiring rooms of the theatre itself.

Indeed, it is interesting to note that these contentions of the landlord regarding the premises 144 West 57th Street and 139 West 56th Street as properties contiguous to the theatre are not advanced as to the premises 146 West 57th Street. We see no difference between these properties insofar as the argument of the landlord is concerned. The only distinction appears to be one of degree in that a relatively larger portion of the building at the latter location is occupied by the theatre than in the other two buildings.

Of course, what has been said on the question of construction involved in this case is not to be taken as suggesting that a demise of a portion of a building is equivalent to a demise of the whole. Rather, it is merely intended to point out that in the light of the contingencies for exercising the right to terminate the tenancy under the lease the context of the cancellation clause indicates that the word "contiguous" was meant to describe properties distinct from those buildings that serve the needs of the theatre.

A considerable part of the record is consumed in discussing a sale of the properties known as 150 West 57th Street and 153 West 56th Street and described as the "Russian Tea Room Restaurant". The landlord contends that this sale originally negotiated in connection with the sale of the theatre properties indicates that both sales were part of a single transaction. If the two sales were originally negotiated together, it is clear that they were severed and became separate transactions before consummation. The sale of the restaurant property was eventually made to a purchaser other than the landlord in this proceeding and under a different contract subsequently executed on August 7, 1946. Since this summary proceeding rests upon the notice to vacate served on the tenant on August 2, 1946, the landlord's right to terminate the lease can only be predicated upon the first contract of sale. This is so because the cancellation clause expressly provides for the landlord to state in any

notice of termination that he has entered into a bona fide contract of sale. Assuming that the second transaction was negotiated in conjunction with the first deal, nevertheless it would not support the present final order in the landlord's favor. The petition would have to be dismissed in any event, but without prejudice to a second proceeding. However, we find no reason for such a dismissal in this case. The evidence clearly shows that on August 2, 1946, after the landlord's contract for the purchase of the theatre properties had been closed, a new proposal to sell the restaurant premises was taken up by Carnegie Hall, Inc., which offered such property separately and at a higher price than was discussed in the earlier negotiations. Thus it appears that no sale of the theatre premises was had in conjunction with the restaurant property. The cancellation clause of the lease required that the demised premises be sold in conjunction with contiguous property.

In conclusion, we find that the language of the cancellation clause of the lease permitting termination of the tenancy in the event of sale of the demised premises in conjunction with any of the properties contiguous thereto does not manifest an intention to permit the landlord to end the term upon a sale of those properties alone in which the theatre is located. We think that the reference to contiguous properties in the cancellation clause of the lease means properties other than the buildings which accommodate the theatre. We hold that the final order of the Municipal Court and the determination of the Appellate Term should be reversed and that the landlord's petition should be dismissed, with costs to the tenant-appellant in all courts.

DORE, J. (dissenting). Contiguous means touching along a considerable part or the whole of one side. The physical conditions existing when the lease was executed should throw light on the true meaning of the cancellation clause in question.

As indicated by tenant's Exhibit A, and the undisputed testimony, the original lessor at the time of making the lease did not own any property whatever to the *east* of 144 West 57th Street or 139 West 56th Street. Accordingly, the parties could not have had in contemplation any properties *eastward* that could possibly be deemed "contiguous". To the west of the demised premises on 57th Street the landlord did not own any contiguous property. Number 148 West 57th Street which borders on the westerly side of 146 was not owned by the original lessor. Therefore, 150 West 57th Street which was so

owned, was not contiguous property; it was separated by twenty-five feet from 146. On 57th Street, therefore on plaintiff's construction of the lease, there was no contiguous property either to the west or to the east of "the demised premises". On 56th Street to the west of the Theatre property, the lessor did own 153 West 56th Street which is contiguous to 141–143.

On tenant's contention in the state of facts existing at the time the cancellation clause was originally made, the only property owned by the lessor that was contiguous to the "demised premises" was 153 West 56th Street immediately west of 141–143; and only by selling that property in connection with the demised premises could the cancellation clause be invoked. It is not likely the parties intended so to restrict the cancellation clause. If they did, it would have been easy to say so. The clause in its original form was drawn in the office of the tenant's attorneys who also were attorneys for the tenant's assignor. As the language is the tenant's, it must be construed, if its meaning is doubtful, most favorably to the landlord and the words should be given the meaning which the tenant should reasonably have understood the landlord would put upon them (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187, 196). The clause as drawn does not refer to contiguous "property", but to "any of the properties" (plural) that are contiguous to "the demised premises". Accordingly it should be construed to include properties owned by the original lessor in 144 West 57th and 139 West 56th Street.

The operative clause of the lease defining the space demised, though it specifically refers to many street numbers, does not include by such references number 144 West 57th Street. The only area in 144 that was used for the theatre purposes is 40 x 12 on the street floor, an irregular section that embraces but 5% of the floor area of the five-story building on that site. That tiny part of 144 used by the theatre is separated by brick walls from the rest of the five-story building which is a self-contained unit with a store on the ground floor and apartments in the upper floors and with no means of ingress or egress to or from "the demised premises."

One hundred thirty-nine West 56th Street is a four-story building with a store on the ground floor and apartments in the upper three floors. The only space used by the theatre is a corner of the basement 18 x 18 or 2% of the area of that building containing some theatre equipment. That four-story structure is a self-contained unit separated from the theatre with no means of ingress or egress to or from the theatre. The one-story struc-

ture on the rear of the lot, 139 West 56th Street, used by the theatre and part of " the demised premises " is also walled off from the remaining part of the four-story structure owned by the landlord.

The tenant's contention is that demise of a tiny portion of a building forbids construing any portion thereof as " contiguous " to the " demised premises ". If such rule be applicable to a five-story building, it should be equally applicable to a fifty-story building. It is in effect equivalent to construing demise of a part as demise of the whole. The landlord does not claim that the property may be contiguous to itself; " itself" means the whole property, the entire building which obviously could not be thus " contiguous "; the property was contiguous not to itself but to the small parts of the whole " demised " to the tenant, all of which, except the equipment in 139, was walled off and separated from the " demised premises " with no means of ingress or egress. On the language used and in the light of the physical facts existing when the lease was made, the tenant's construction was properly rejected by the trial court and the majority of the Appellate Term.

In allowing additional testimony the trial court did not abuse its discretion.

Accordingly, we dissent and vote to affirm the order of the Appellate Term.

GLENNON and COHN, JJ., concur with CALLAHAN, J., DORE, J., dissents in opinion in which PECK, P. J., concurs.

Determination of the Appellate Term and final order of the Municipal Court reversed and the petition of the landlord dismissed, with costs to the tenant-appellant in all courts. Settle order on notice.